# SUPREME COURT

OF

# ILLINOIS.

## THIRD GRAND DIVISION.

### APRIL TERM, 1863.

THOMAS A. MAPPS

*v.*

SHARPE & COMPANY.

| 32   13<br>|180  631|

1. AUCTION SALES — *preventing competition.* After an injunction had issued restraining a mortgagee from selling a portion of the premises under the power of sale contained in the mortgage, the mortgagee and the party procuring the injunction made a secret agreement that the sale should be made, the latter should bid off the premises at a given sum, and the injunction suit should be dismissed. The sale took place, the injunction being still pending, and the premises were bid off as agreed upon. *Held,* that such an agreement, being secret, tended to prevent competition in bidding, and the sale could be avoided by one holding the fee simple title subsequent to the mortgage, who desired to redeem.

2. ASSIGNMENT — *note and mortgage.* When a note which is secured by mortgage, is transferred, the mortgage as an incident follows it, and enures to the benefit of the holder of the note. And whether the transfer of the note is legal or equitable, the effect is the same.

3. AUCTION SALES — *who may be purchaser.* A mortgagee to whom a power of sale is given in the mortgage cannot become a purchaser at a sale made by virtue of such power.

Mapps *v.* Sharpe & Company.

4. And where the note to secure which the mortgage was given, is transferred by the payee to a firm of which he had become a member, all the members of the firm are equally prohibited from purchasing at a sale-made by virtue of the power given in the mortgage.

5. It is a universal rule that the officer or person charged with the sale of property at auction, whether by authority of law, or under a power derived from the owner, is prohibited from becoming the purchaser.

6. SUCH SALES VOIDABLE. Where such a purchase has been made, it is not necessary to show that wrong has resulted, as the law will not recognize such a bidder as capable of becoming a purchaser.

7. USURY — *forfeiture at law and in equity.* Under the statute, when usury is reserved, the creditor forfeits the whole interest taken or reserved, and is allowed to recover the principal sum only.

8. In equity, however, the rule has prevailed, when usury is relied upon as a defense, that it will only be allowed to the extent of the excess beyond the legal rate. In that forum, such excess only is allowed to be relieved against, as the party seeking equity must do equity.

WRIT OF ERROR to the Circuit Court of Will county; the Hon. JESSE O. NORTON, Judge, presiding.

This was a suit in chancery instituted in the Circuit Court by Thomas A. Mapps, the plaintiff in error, against Bernhard U. Sharpe, George N. Sharpe and George Allen.

It appears from the bill, answers and testimony in the case, that on the 24th day of April, 1857, one John G. Royal, being the owner in fee of the south-east quarter of section four, in township thirty-four, north of range nine, east of the third principal meridian, situated in Will county, executed a mortgage upon these premises to Egbert H. White, with a power of sale in the mortgagee, to secure the payment of the sum of one thousand dollars.

On the 22nd day of the same month, two days prior to the execution of the mortgage to White, Royal and his wife conveyed by deed with covenants of warranty, the north half of the same quarter section to Mapps, the complainant, for the consideration of nine hundred dollars. The deed to Mapps was not presented for record until some time in May following, and not until after the mortgage to White had been recorded.

On the 10th of June, 1857, Mapps borrowed from the said Bernhard U. Sharpe the sum of eight hundred dollars for thirty days, agreeing to pay interest therefor at the rate of three per cent. per month, and executed his note to said Bernhard for the sum of eight hundred and twenty-four dollars — the twenty-four dollars being for interest. To secure this note Mapps executed and delivered to said Bernhard U. Sharpe a mortgage upon the eighty acre tract which he had purchased from Royal, together with several other parcels of land. This mortgage conferred the power of sale upon the mortgagee in case of default in payment.

At the end of the thirty days for which the money was borrowed, Mapps procured an extension of the time of payment from month to month until October, 1858, by paying to Sharpe interest at the rate of five per cent. per month.

The interest was paid promptly, and the payments indorsed on the note as being for the interest, amounting in all to over six hundred dollars.

In the meantime, in October, 1857, the defendants entered into copartnership in the business of banking in Joliet, under the firm and style of Sharpe & Company, and the said loan to Mapps was transferred by Bernhard U. Sharpe to the firm, he receiving credit therefor on their books.

The defendants, who thus held the note and mortgage executed by Mapps, declining to give any further extension, proceeded in the name of Bernhard U. Sharpe, the mortgagee, to give notice of the sale under the power conferred in the mortgage, and, on the 13th day of November, 1858, Bernhard U. Sharpe, in pursuance of the notice previously given, sold at public auction, the eighty acre tract which Mapps had purchased from Royal, and also the several other tracts included in his mortgage. At this sale, George N. Sharpe, one of the firm of Sharpe & Company, who were the owners of the note and mortgage at the time, became the purchaser through R. R. Allen, his agent, at a sum, as Mapps claims, greatly less than the value of the land. The premises were conveyed to him, in pursuance of the sale by Bernhard U. Sharpe.

Prior to the sale under the Mapps mortgage to Sharpe, White, the mortgagee of Royal, being about to make sale under the power contained in his mortgage, of the entire south-east quarter of said section four, George N. Sharpe procured an injunction against White, restraining him from selling the north half of that quarter section, which was included in the Mapps mortgage, and requiring him first to resort to the remaining eighty acre tract for the satisfaction of his debt. Accordingly, on the 1st day of February, 1858, White sold the south half of that quarter section to George N. Sharpe, for one thousand dollars.

Subsequently, on the 1st of February, 1859, White sold the remaining half of the quarter section mentioned, to the said George N. Sharpe, for the sum of one hundred and fifty dollars. Just before this sale, and on the day it was made, it was agreed between White and Allen, as the agent of the defendants, that Allen, as such agent, should bid off this last mentioned eighty acre tract at the sum mentioned, and that no one should bid at the sale for White, and that the injunction, which was still pending, should be dismissed. This arrangement was made, as Mapps alleges, for the purpose of fortifying the defendants' title derived from him, against the defense of usury, and his homestead right which was not released by his mortgage to Bernhard U. Sharpe.

Upon this state of case, Mapps, the complainant, asked that he might be allowed to redeem the mortgaged premises, offering to pay whatever amount should be found to be due upon a fair account being taken.

The cause coming on to be heard, the Circuit Court rendered a decree dismissing the bill. Thereupon Mapps sued out this writ of error, and alleges,

1. The court erred in dismissing the bill of complaint.

2. In not ordering an account to be taken between the parties; and after deducting all payments made, and the usury paid by plaintiff in error to defendants in error, in not ordering that the plaintiff in error be permitted to redeem the premises sold, by paying defendants in error the balance found to be due.

3. In not ordering defendants in error, upon payment, or

tender of such balance, to re-convey the said premises to plaintiff in error.

Messrs. McRoberts & Goodspeed, for the plaintiff in error.

We contend that the complainant in this case should be permitted to redeem the property described in the bill, which the defendant George N. Sharpe purchased at the sale made by his co-defendant Bernhard U. Sharpe, and Egbert H. White, by paying the amount legally due upon the note to Bernhard U. Sharpe;

1. Because the contract for the loan of $800 by complainant from Bernhard U. Sharpe, was usurious. The defendants thereby forfeited all interest, both legal and illegal, and are entitled to nothing but the principal. *Lucas* v. *Spencer et al.*, 27 Ill. 15. True, according to the case of *Bartlett et al.* v. *Henry*, 10 Johns. R. 185, a *bona fide* purchaser, without notice, under a sale made by virtue of a power of sale contained in a mortgage, would not be affected by usury in the original debt; but George N. Sharpe was not a *bona fide* purchaser, because, at the time of the sale, he was one of the owners of the note and mortgage. The case of *Hadden* v. *Innes et al.*, 24 Ill. 381, does not militate against the principle for which we contend. In that case the defendant failed to make his defense at law, which he could have done by filing a plea of usury.

2. Because George N. Sharpe, the purchaser at both sales, was a partner in the firm of Sharpe & Co., — was equally interested, and in equity occupied the position of mortgagee of the premises, and therefore was not a *bona fide* purchaser. 1 Hilliard on Mort., p. 75, secs. 40 and 41; ib. 128 and 129; 4 Met. 325; 19 Verm. 9; 2 Johns. Ch. R. 252; 10 Johns. R. 185; 1 Wash. on Real Property, 497 and 500; see also *Benham* v. *Rowe*, 2 Cal. R. 387. The law is well settled that a mortgagee with power to sell, cannot be both seller and purchaser. It is a fraud in law. See the reasoning of the court in *Longwith* v. *Butler*, 3 Gilm. 44.

3. Because the evidence shows that Allen, as the agent of

3

Sharpe & Co., arranged with White to bid off the N. ½ of S. E. ¼, Sec. 4, in the name of George N. Sharpe, at the sale under White's mortgage, for $150. This arrangement renders the sale void. *Loyd et al.* v. *Malone*, 23 Ill. 43; *Webster et al.* v. *French*, 11 Ill. 254; *Longwith* v. *Butler*, 3 Gilm. 32. It is true that George N. Sharpe was not the mortgagee, nor assignee of White's mortgage; but the arrangement made by Allen, Sharpe's agent, and the agent of the firm, with White, to bid off the land in question, showed great unfairness, and a fraudulent attempt to prevent competition.

4. The sales should be set aside on the ground of fraud.

Mr. G. D. A. PARKS, for the defendants in error, insisted that the alleged collusion between White and Allen, as the agent of Sharpe, in reference to the sale of the north half of the quarter section, was not of such character as to vitiate the sale. White, being the mortgagee, could not have purchased at his own sale, so his agreement not to bid was only an agreement not to do that which he had no right to do. The agreement that Allen should bid off the land at $150, did not cut off competition, but really only fixed the minimum price at which the property should be sold. Mapps could not complain of this, though a purchaser might, and have relief as from a fraud. 1 Sug. Vend. 13; 2 Kent's Com., 538; *Veazie* v. *Williams*, 8 How. 134.

In auction sales, there must be perfect fairness between buyer and seller. *Webster et al.* v. *French et al.*, 11 Ill. 268; *Garrett* v. *Moss et al.*, 20 Ill. 549. But all the authorities agree that the auctioneer may fix a *minimum*.

It can matter but little to the rights of anybody, how the *minimum* is fixed, whether by announcement at the sale, or by an agreement on the part of a bidder to start it at a particular sum; provided that agreement involves no stipulation or tacit understanding, to the effect that the auctioneer by some artifice shall cut off any competition, which might carry the biddings beyond the *minimum*.

The object of Allen in this purchase is not and need not be denied. A previous title had been obtained which, it was feared,

was defective by reason of the want of a sufficient relinquishment of the homestead right in the mortgage, under which it had been acquired. It is supposed the defendants could have bought on a speculation, and if they could have bought on a speculation, it would indeed be strange if they could not lay hold of this opportunity to fortify a prior title and defeat the dishonorable design of Mapps to avail himself of a technical objection.

The usury, though it might have been a ground for an injunction to stay or stop the sale upon equitable terms, is not a sufficient ground to disturb a title already acquired and vested under the mortgage.

A balance was due Sharpe as admitted by the bill. That balance was a sufficient basis for the operation of the power of sale. The right to sell can never depend on the amount due. No tender of that balance was ever made. The foreclosure was quite as effectual to all intents and purposes as a foreclosure by judicial procedure, if regularly conducted, and cut off all defenses in the same way. See *Jackson* v. *Henry*, 10 Johns. R. 196. Personal notice of the sale was dispensed with in the power which Mapps had seen fit to give. Mapps was as completely cut off from his defense of usury as if he had voluntarily paid the usurious debt, or had been sued in court and permitted judgment by default. The foreclosure, then, if otherwise valid, was effectual to cut off all defenses which, according to the laws and policy of our state, are required to be made before foreclosure, and if not, are considered as waived. *Nichols* v. *Stewart et al.*, 21 Ill. 106; *Hadden* v. *Innes et al.*, 24 Ill. 385.

The counsel denied that George N. Sharpe was precluded from being a purchaser under the Mapps mortgage, merely because he was one of several assignees of the note.

Where the entire note and mortgage pass by assignment, and the assignee makes the sale, if authorized so to do, the question would be different. But here the mortgage and the equitable ownership of the note are in different hands. The power of

sale was not exercised by the purchaser, though for his benefit the same as in the case of a trust deed.

Mr. Justice Walker delivered the opinion of the Court:

At the time the note was given, a mortgage was executed to secure its payment. The mortgage embraced several tracts of land. It also contained a power of sale if default should be made in the payment of the money. After the maturity of the note, time of payment was several times extended, from month to month, at three per cent. per month interest, and afterwards, in the same manner, at five per cent. per month.

All of the interest at these rates was paid until the 28th of October, 1858.

Prior to the execution of this mortgage, Royal, the grantor of the plaintiff in error, had given a mortgage on the whole quarter section to one White, including the eighty acres in controversy. On the first day of February, 1859, White sold this eighty acre tract to George N. Sharpe, for one hundred and fifty dollars, under his mortgage, and made the conveyance to R. R. Allen, who acted in the transaction as the agent of Sharpe. Previous to this sale the defendant, George N. Sharpe, had procured an injunction to prevent White from selling this land under his mortgage, until he should first sell the other eighty acres of the quarter section not embraced in defendants' mortgage.

On the day of the sale, and immediately before it occurred, it was agreed between White, and Allen, the agent of defendants, that he should bid off the land for one hundred and fifty dollars, and the injunction suit should be dismissed. It was still pending at the time the sale was made. Even if this arrangement between Allen and White was not fraudulent, to avoid the sale, it had the manifest effect of preventing competition in the biddings. During the pendency of the injunction, purchasers would know that the sale was liable to be set aside. Plaintiff in error was not a party to, nor does he seem to have been aware that the sale was to be made in violation

of the terms of the injunction. He did not have the opportunity of protecting his rights by finding purchasers willing to give more than the land brought at the sale. Nor is it any answer to say that defendant in error and White, the parties to the injunction suit, had agreed that the sale might proceed. Plaintiff in error had rights in the matter that they had no power to control.

This agreement was only consummated a few minutes before the land was offered for sale. It was not known in the neighborhood, and no means of competition at the sale was afforded. Again, with the injunction pending, if higher bids had been made, White could have refused to have gone on with the sale because the injunction had not been dissolved. The arrangement was for defendants' benefit, and was made to deprive complainant of the right to set up usury and the homestead law, under the mortgage executed to Bernhard U. Sharpe. And, although fraud is disclaimed, the transaction has very much the appearance of perverting the process of the court to improper purposes.

Defendants in error had, on the 13th day of January, 1858, caused this eighty acre tract to be sold under the mortgage executed to defendant, B. U. Sharpe. At that sale, George N. Sharpe became the purchaser, at the sum of two hundred dollars. But it is admitted that this mortgage did not release the right to insist upon the provisions of the homestead law. The purchase was made by one of the firm who held the note and mortgage. It is true, that this mortgage was given to B. U. Sharpe, but he had passed it over to the firm of which he and the other defendants were members. When the note was transferred, the mortgage, as an incident, followed it, and inured to the benefit of the holders of the note. And whether the transfer of the note was legal or equitable the effect was the same.

This presents the question whether a mortgagee may become a purchaser under a sale made in pursuance of a power contained in the mortgage. It only needs a statement of the proposition, to determine that he cannot, as the law will not

authorize him to act as both the vendor and vendee. In such a sale there is every temptation to promote his own interest, at the sacrifice of that of the owner. The law will neither subject nor suffer him to be so tempted to act unjustly. It is believed to be a rule of universal application, that the officer or person charged with the sale of property at auction, whether by authority of law, or under a power derived from the owner, is prohibited from becoming the purchaser. If sanctioned, it would lead to oppression, wrong and fraud, highly injurious to the owner. When such a purchase has been made, it is not necessary to show that wrong has resulted, as the law will not recognize such a bidder as capable of becoming a purchaser. This attempt to purchase wholly failed to foreclose complainant's equity of redemption, and left the parties in the same situation as though the effort to sell had not been made.

The defendants in error not having acquired any additional interest or benefit by either of these sales, the complainant has the same right to redeem, and upon the same terms, as he might have done previous to that time. Defendants admit in their answer that the contract was usurious in its inception, and that usurious interest was paid until October, 1858. The requirements of the statute are clear and explicit, that when usury is reserved, the creditor shall forfeit the whole interest taken or reserved, and only be allowed to recover the principal sum.

In equity, however, the rule has prevailed, when usury is relied upon as a defense, that it will only be allowed to the extent of the excess beyond the legal rate. In that forum, the excess above the legal rate is only allowed to be relieved against, as the party seeking equity must do equity. *Ferguson* v. *Sutphen*, 3 Gilm. 547. The decree in this case must be reversed, and the cause remanded to the court below, with instructions to permit the complainant to redeem the mortgaged premises, upon his paying the principal, with six per cent. interest from the date of the note until the rendition of the decree, and to allow all payments over and above that rate, as a credit upon the principal.

*Decree reversed.*